## Case No. 3,879.

### DIBBLE et al. v. AUGUR.

[7 Blatchf. 86.][1]

Circuit Court, S. D. New York. Dec. 30, 1869.

PATENTS— ASSIGNMENT AND LICENSE — BILL FOR INFRINGEMENT—PARTIES — TRUSTS — CONSTRUCTION OF CLAIMS — INFRINGEMENT — NOVELTY — SEWING MACHINES.

1. R., being the owner of a patent, assigned to D. all his, R.'s "right, title, interest, claim

or demand whatsoever, in, to or under" the patent. On the same day, three corporations, and R., and D., signed an agreement reciting that the corporations were desirous of purchasing the patent, and providing as follows: (1) R. assigns the patent to D., and releases the corporations from all damages for infringing the patent; (2) R. is to have the right to receive and retain all damages for past infringement of the patent by others than the corporations, and the right to recover and retain all damages for infringement of the patent after such day by others than the corporations, and their licensees, agents or customers; (3) after the granting by the corporations of any license to use the patent, all claim for damages thereafter accruing to R. is to cease; (4) all suits prosecuted by R. are to be at the sole expense of the corporations; (5) the corporations are not to grant any license to use the patent except to their general licensees: *Held*, that the effect of the two instruments was to vest in D., as trustee for the corporations, all R.'s interest in the patent, and to vest in D., as trustee for R., all interest in all claims for past infringements of the patent against others than the corporations, and all interest in all claims for future infringements of the patent against others than the corporations and their licensees, agents, or customers.

[Applied in May v. County of Juneau, 30 Fed. 245. Explained in May v. County of Saginaw, 32 Fed. 630.]

2. The assignment from R. to D. did not, by conveying all of R.'s "right, title, interest, claim or demand whatsoever, in, to or under" the patent, convey claims for past infringements.

3. A bill to recover for infringements committed before such assignment and agreement were made, filed against a defendant, not one of the corporations, ought properly to be brought in the name of D., as trustee for R., joining R., as the owner of the equitable interest.

4. The addition, as plaintiffs, of D., as trustee for the corporations, and of the corporations themselves, is surplusage; but where the objection to such addition was not raised until the hearing, and R. had, after the filing of the bill, assigned to D., as trustee for the corporations and for R., all claims for past infringements of the patent, the bill was allowed to stand.

5. Where, by a license under a patent, the licenser agrees that he will not make any further claim of license fees from the licensee under any other patents which he owns or controls, or may thereafter own or control, the license will be *held* not to apply to infringements committed by the licensee before the date of the license, of a patent, the control of which, including the right to recover for such infringements, passed to the licenser after the granting of such license.

[Cited in Gordon v. Anthony, Case No. 5,605; Consolidated Oil Well Packer Co. v. Eaton, Cole & Burnham Co., 12 Fed. 870.]

6. The first claim of the patent granted to Thomas J. W. Robertson, November 22, 1859, for an "improvement in sewing machines," namely: "The employment, in combination with the needle of a sewing machine, of a plate, K, constructed and operating substantially as herein shown and described, for the purpose of laying and holding braid, gimp, or other material, upon the surface of the fabric, as set forth," is a claim to the employment, in combination with the needle of a sewing machine, of a separate detachable plate, constructed and operating substantially as shown and described in the patent, for the purpose of laying and holding braid, gimp, or other material, upon the surface of the fabric, as set forth, as contradistinguished from the employment, in such combination, of a guide not formed in a separate detachable plate.

[Followed in Dibble v. Sibley, Case No. 3,883.]

7. The braiding attachment used in the Florence sewing machine, being a separate, detachable plate, with a guide for braid, arranged in connection with the presser foot, is not an infringement of such first claim of the Robertson patent.

8. The second claim of the Robertson patent, namely: "The arrangement of the guides, e, e, e, to extend past the centre, and on each side of the needle hole, as and for the purpose herein set forth," is infringed by such braiding attachment of the Florence sewing machine.

9. The claims of the Robertson patent are not invalid for want of novelty.

In equity. This was a final hearing on pleadings and proofs. The bill was filed by Sydney W. Dibble, trustee of the Wheeler and Wilson Manufacturing Company, the Grover and Baker Sewing Machine Company, the Singer Manufacturing Company, and Thomas J. W. Robertson, by the said three companies, and by the said Robertson, as plaintiffs, against James M. Augur, as agent of the Florence Sewing Machine Company. The bill was founded on letters patent of the United States, granted to Robertson, on the 22d of November, 1859, for "an improvement in sewing machines." Robertson, being the owner of the entire patent, on the 8th of May, 1868, assigned to Dibble "all his, said Robertson's, right, title, interest, claim or demand whatsoever, in, to, or under" the said letters patent. On the same day, a written agreement was made between the three companies and Robertson, and was also signed by Dibble, reciting that the said companies were desirous of purchasing the said patent, and providing as follows: (1) Robertson assigns the patent to Dibble, and releases and forever discharges the said companies, their agents and customers, from all damages and claims for damages for infringing the patent; (2) Robertson is to have the right, in the name of Dibble, or otherwise, to sue for, receive, and retain all damages for past infringement of the patent by others than the said companies, and the right, in like manner, to sue for, receive, retain, and collect all damages, profits, and royalties for infringement of the patent, after the 8th of May, 1868, by others than the said companies and their licensees, agents, or customers; (3) from and after the granting of any license by the companies to use the patent, all claim for damages, compensation, or royalty thereafter accruing to Robertson, is to cease; (4) all suits prosecuted by Robertson, whether in his own name or that of Dibble, shall be at the sole expense of the companies, for costs, if required; (5) the companies are not to grant any license to use the patent except to their several licensees. The bill of complaint was sworn to on the 8th of June, 1868, and filed on the 13th of June, 1868. On the 16th of June, 1868, Robertson assigned to Dibble, as trustee for the three companies and for Rob-

ertson; all claims for past infringements of the patent. The only evidence of infringement was an admission of the defendant, that he, as agent for the Florence Sewing Machine Company, sold, prior to February 20th, 1868, "one or more Florence sewing machines, like Exhibit 7, with the braiding attachment, Exhibit 8, attached to the foot thereof, as shown.' The answer set up as a defence, that the Florence Sewing Machine Company "had owned the right, since February ———, 1868, to apply said patented improvements to their machines, if so disposed." To sustain this defence, the only evidence was a license granted by the three companies to the Florence Sewing Machine Company, dated February 20th, 1868, licensing the latter company to manufacture, use, and vend for use, certain of the inventions contained and described in some sixteen patents mentioned in the license, not including the patent to Robertson, so far as the same or any of them were contained in three specimen sewing machines that day deposited with the receiver of the licenses. Such license provided for a specified patent rent for every sewing machine which should be made or sold under the license by the licensees, while the license remained in force. It also contained this clause: "And said licensers also respectively agree, that they will not, while this agreement remains in force, and is performed on the part of said licensees, make any further claim of license fees from said licensees under any other patents which they now or may hereafter own or control, covering any of the devices embodied in said specimen machines."

Frederick H. Betts, for plaintiffs.
Augustus L. Soule, for defendants.

BLATCHFORD, District Judge. On the facts in this case, it is contended, on the part of the defendant, that the right to recover for the profits derived from infringements of the patent, committed prior to February 20th, 1868, did not pass to Dibble by the two instruments of the 8th of May, 1868; that, when the bill was filed, the right to recover for such profits was in Robertson alone; that the proper remedy was by a suit at law, in the name of Robertson; that this bill will not lie in behalf of Robertson, because he has a full, adequate, and complete remedy at law, and does not bring the bill for discovery, and was not, when it was filed, the owner of the patent; that it will not lie in behalf of the plaintiffs other than Robertson, because, when it was filed, they had no interest in the claim for such profits; that, whatever may have been the rights of Robertson when the bill was filed, he, after that, conveyed to Dibble, as trustee, all right to collect such profits; and that the enforcement of the claim for such profits in behalf of the three companies, is a violation of the provisions of the license of February 20th, 1868.

The bill is filed in the name of the three companies, and of Robertson, and of Dibble, as trustee of the three companies and Robertson. I think that the purport and effect of the two papers of the 8th of May, 1868, were, to vest in Dibble, as trustee for the three companies, all Robertson's interest in the patent, and to vest in Dibble, as trustee for Robertson, all interest in all claims for past infringements of the patent against others than the three companies, and all interest in all claims for future infringements of the patent against others than the three companies and their licensees, agents or customers. The two papers of the 8th of May, 1868, must be construed in connection with each other. By the naked assignment of that date, Robertson did not transfer to Dibble his claims for past infringements of the patent. There are no words therein looking to the past. The language is wholly future in its scope. In conveying all of Robertson's "right, title, interest, claim or demand whatsoever, in, to or under" the patent, it conveys only the right to claims for infringements which should be committed after such assignment. Moore v. Marsh, 7 Wall. [74 U. S.] 515. The words "claim or demand whatsoever, in, to or under" the patent, are not sufficient to cover claims for past infringements. Besides, the other paper of the same date clearly shows that Robertson did not intend to convey to Dibble individually, or otherwise than as trustee for him, Robertson, any claim for any past infringement of the patent against others than the three companies. When the bill in this case was filed, it ought, properly, so far as the claim in respect to the alleged infringements covered by the admission before referred to is concerned, to have been filed in the name of Dibble, as trustee for Robertson, joining Robertson as the owner of the equitable interest, the legal interest of which was represented by Dibble, as trustee. It was so brought, adding, as plaintiffs, Dibble, as trustee for the three companies, and the three companies themselves. Such addition was surplusage; but, as the objection thereto was not raised until the hearing, and as, by the paper of the 16th of June, 1868, the title to the claim in respect to the alleged infringements covered by such admission, was transferred by Robertson to Dibble, as trustee for the three companies, and for Robertson, and as the bill is brought in the name of such trustee and of the cestuis que trust, it will be allowed to stand. The defendant, if compelled to respond in this suit to such plaintiffs, in respect to the alleged infringements covered by such admission, will be responding to every person who can possibly make a claim against him in respect to such alleged infringements. The suit, being for an account of profits, is properly brought in equity.

The license of the 20th of February, 1868, can apply only to machines made or sold by

the licensees after that date. It therefore, has no application to the alleged infringements covered by the admission before referred to.

The next question is, whether the "Florence sewing machines, like Exhibit 7, with the braiding attachment, Exhibit 8, attached to the foot thereof," infringe the Robertson patent. It is claimed by the plaintiffs, that such Florence sewing machine, with such attachment, infringes the first and second claims of such patent. The specification of the patent states, that the nature of the invention consists, first, in combining a braiding guide with a sewing machine; second, in the peculiar form of said guide, to enable the operator to keep the ornamental stitching always in the centre of the braid, in turning corners, circles, &c. The machine is described as having a needle holder, and a needle, and a foot or pressure for stripping the cloth from the needle. The guide plate, which contains the guides for the braid, is attached to the table of the machine by a screw, so as to be adjustable. It has, on the under side of it, two cavities, which begin at the small end of the plate and branch out at the other end into six small grooves or guides of various widths, to accommodate different widths of braid. The guide plate is made long enough to nearly or quite cover the needle hole in the table. To enable the needle to pass through, a notch is cut in the plate in the centre of each groove or guide. The braid is passed through that one of the guides which is nearest its width and the guide plate is then adjusted, so that the centre of the guide which has the braid in it shall be in a line with the path of the needle, and the guide plate is then fastened there by the screw. The fabric to be ornamented is placed under the foot or pressure, the machine is set in operation, and, as the fabric is fed, the braid, being fastened to the cloth by the stitching, is drawn through the guide. The guides, being extended past the centre of the needle hole, and the top of the guide being cut away for the passage through of the needle, the guides hold the braid in position until it is sewed on the cloth. The specification states, that if the guide plate were made so short that the needle would pass without such cutting away, the ornamental stitching would not always be in the centre of the braid in turning circles, corners, &c., but that, by making the guides in the manner shown, the stitching is always in the centre; and that the top of the guide plate is bevelled off at the end nearest the needle, to avoid the sudden change in the position of the cloth. By the patented arrangement, the braid is sewed on the under surface of the cloth. The specification says, that, instead of the movable guide plate, an adjustable guide may be made in the table, "or the guide may be arranged in connection with the foot, so as to lay the braid on the upper surface of the cloth." The patentee further says, in his specifica-

tion: "I do not mean to limit myself to the precise form of the devices herein shown, as they may be varied in many ways, without altering the nature of my invention. Neither do I mean to claim broadly a guide to lay on a braid, for I am aware that a device called a braiding guide has long been used, but this is only applicable to sewing binding on the edge of a piece of cloth or other material, while my device can be used on any part of the fabric, producing a totally different effect, one being simple binding and the other handsome embroidery. I am also aware that there are devices in use for laying a cord between two thicknesses of material, and confining the cord in its place by stitching the material together on both sides of the cord, forming a kind of raised or embossed work. This I do not claim." The two claims alleged to have been infringed are these: "First. The employment, in combination with the needle of a sewing machine, of a plate, K, constructed and operating substantially as herein shown and described, for the purpose of laying and holding braid, gimp, or other material upon the surface of the fabric, as set forth. Second. The arrangement of the guides, e, e, e, to extend past the centre and on each side of the needle hole, as and for the purpose herein set forth."

The braiding attachment in the defendant's machine is attached to what is called in the Robertson patent the foot or pressure for stripping the cloth from the needle. Such braiding attachment has a single channel for the passage and guidance of the braid, covered on all sides except where the braid enters and leaves the channel. The ends of the channel project, on each side, beyond the centre of the needle hole.

I think that the first claim of the Robertson patent must be construed as claiming the employment, in combination with the needle of a sewing machine, of a separate detachable plate, constructed and operating substantially as shown and described in the patent, for the purpose of laying and holding braid, gimp, or other material, upon the surface of the fabric, as set forth, as contradistinguished from the employment, in such combination, of a guide not formed in a separate detachable plate. This separate detachable plate is described in the specification as constructed with grooves or guides of various widths, to accommodate different widths of braid, and as being attached to the table of the machine. The grooves are on the under side of the plate, between the upper or ungrooved face of the plate and the surface of the table, that surface alone forming the bottom of the grooves. The cloth passes between the bottom of the presser foot and the upper face of the plate. The braid issues from under the plate, and passes between the under side of the cloth and the surface of the table, and is sewed to the under side of the cloth out of view of the eye of the operator. It is true, that when the machine, with the

plate attached, is in operation at any given time, and braid of a given width is being sewed, but one groove is in use in connection with the needle, and that such groove and the needle are adequate instrumentalities, in connection with the extension of the sides of the grooves past the centre of the needle hole, to sew the braid on with the stitching always in the centre of the width of the braid. It is also true, that the specification says, that, instead of the movable guide plate, an adjustable guide may be made in the table, or the guide may be arranged in connection with the foot or pressure, so as to lay the braid on the upper surface of the cloth. But the specification does not show how the guide is to be arranged in connection with the foot or pressure. The 6th section of the act of July 4, 1836 (5 Stat. 119), requires. that an inventor shall, in the description of his invention, in the case of a machine, fully explain the several modes in which he has contemplated the application of the principle or character of his invention, by which it may be distinguished from other inventions, and shall particularly specify and point out the part, improvement or combination, which he claims as his own invention or discovery. Instead of fully explaining the mode in which the separate detachable plate, described in the specification and shown in the drawings, is to be arranged in connection with the foot or pressure. the patentee contents himself with suggesting that "the guide" may be arranged in connection with the foot or pressure, so as to lay the braid on the upper surface of the cloth. Indeed, it is not clear, from the specification, what it is that the patentee suggests may be arranged in connection with the foot or pressure. It is not the movable guide plate that is to be arranged in connection with the foot or pressure, because he says, that, "instead of the movable guide plate," "an" adjustable guide may be made in the table, or "the" guide may be arranged in connection with the foot or pressure. Unless it is the movable guide plate that is to be arranged in connection with the foot or pressure, the first claim of the patent does not cover it. for that is confined to the combination of such plate. constructed and operating substantially as shown in the patent, with the needle; and, if it be the movable guide plate that is to be so arranged. the specification leaves it to be invented how such arrangement is to be made. The patentee himself, in his testimony, shows that he did not contemplate the application to the foot or pressure, of the movable guide plate shown in his patent. He says, that it is an object to have the foot as small as possible, so that it will not cover any more of the cloth than necessary; and that, when too much of the cloth is covered, the operator cannot see so well the line in which the sewing is to be done. When asked. on cross-examination. whether it would not be a decided disadvantage, to have the foot or pressure made with an attachment for braiding containing a set of channels or grooves of various widths, for the passage of braid of like various widths, he replies, that, if the guide plate is beneath the material, it would be no objection. When further asked, whether it would not be objectionable if such attachment were adjusted to the foot or pressure. he replies that it would hide the work somewhat from the operator, and that he, therefore, applied it to the table or plate of the machine. In my judgment, the braiding attachment found in the defendant's machine does not employ the combination specified in the first claim of the Robertson patent. It has no plate constructed and operating substantially like Robertson's plate. It required invention to make a separate detachable plate. with a guide for braid, available and useful when attached to the foot or pressure, notwithstanding all that is found in the Robertson specification. The guides of Robertson had to be reduced to a single guide closed on all sides except where the braid enters and leaves the channel, and the plate had to be so arranged as to be reduced to a size that could be conveniently used in connection with a small foot or pressure.

On the construction which I have given to the first claim of the Robertson patent. there is nothing in the alleged invention of Thorp that interferes with that claim, on the question of novelty, as Thorp had no separate detachable plate.

The second claim of Robertson's patent is, I think, infringed by the defendant, and is not anticipated by Thorp.

There must be a decree for a perpetual injunction and an account, in respect to the second claim, with costs.