## MAY *v.* SAGINAW CO.

*(Circuit Court, E. D. Michigan. October 17, 1887.)*

1. **PATENTS FOR INVENTIONS—INFRINGEMENT—ACTION AGAINST COUNTY.**
   An action will lie against a county for the infringement of a patent.

2. **COURTS—FEDERAL JURISDICTION—CLAIM AGAINST COUNTY.**
   A state statute vesting in the board of supervisors of each county "exclusive power to adjust all claims against their respective counties" is no bar to a prosecution for a tort in the federal court.

3. **PATENTS FOR INVENTIONS—ASSIGNMENT—SCOPE OF.**
   An assignment of an expired patent by an administrator of the patentee, purporting to convey "all the right, title, interest, claims, and demands whatsoever, which the estate has in, to, by, under, and through the said improvements and letters patent," covers the right to sue for and collect claims for past infringements.

*(Syllabus by the Court.)*

On Motion for New Trial.

This was an action of trespass on the case, for the infringement of a patented improvement in the construction of prisons. The patent having expired, the case was begun at law, tried by a jury, and a verdict rendered for the plaintiff in the sum of $1,500. Defendant thereupon moved for a new trial, upon the grounds stated in the opinion.

*M. C. Burch* and *George H. Lothrop,* for plaintiff.

*C. F. Burton* and *C. J. Hunt,* for defendant.

BROWN, J. The *first* reason assigned for a new trial, viz., that a county cannot be sued for the infringement of a patent, is covered by the decision of Judge JACKSON, of this circuit, in *May* v. *County of Logan*, 30 Fed. Rep. 250, and is no longer open to question in this court.

The *second* ground, that the county is not suable without showing no-
tice of demand, is based upon that provision of the state constitution
vesting in the board of supervisors "exclusive power　＊　＊　＊　to ad-
just all claims against their respective counties, and the sum so fixed
and defined shall be subject to no appeal." This provision, however,
has no application to claims for torts, and was not intended to deprive
the courts of common law of their original jurisdiction over such claims.
*Endriss* v. *County of Chippewa*, 43 Mich. 317, 5 N. W. Rep. 632. And
even if it were, it would have no application to non-residents suing in
the federal courts. *Suydam* v. *Broadnax*, 14 Pet. 67; *Bank* v. *Jolly's
Adm'rs*, 18 How. 503. The cases of *May* v. *Buchanan Co.*, 29 Fed. Rep.
469, and *May* v. *Cass Co.*, 30 Fed. Rep. 762, are not in point, as the
statutes are quite different. I have repeatedly upheld provisions similar
to those of the Iowa Code.

The *third* ground, that plaintiff showed no title to sue, is based upon
the opinion of the circuit court for the Western district of Wisconsin, in
*May* v. *Juneau Co.*, 30 Fed. Rep. 241, in which it was held that the
terms of the assignment to plaintiff of her husband's interest in the pat-
ent were not broad enough to cover claims for infringements prior to the
assignment. This case is undoubtedly in point, and is entitled to our
careful consideration. In coming to the conclusion which he did, that
the assignment vested no title in the plaintiff, it seems to us that undue
weight was given by the learned judge to the cases of *Moore* v. *Marsh*, 7
Wall. 515; and *Dibble* v. *Augur*, 7 Blatchf. 86. In the first of these
cases, Moore, the patentee, brought suit against Marsh for an infringe-
ment. Defendant pleaded that, *after* the date of the alleged infringe-
ment, the plaintiff had sold and assigned an undivided half of the pat-
ent. To this plea the plaintiff demurred. The question, therefore, was
whether an assignment by a patentee of his interest in the patent was a
bar to an action by him to recover damages for an infringement com-
mitted *before* such transfer. The court, without hesitation, held that it
was not. The case merely decides that a patentee, who has sold his
right under a patent, may recover for an infringement, during the time
he was the owner of it. It is singular that it should ever have been con-
troverted. In *Dibble* v. *Augur*, 7 Blatchf. 86, an opinion is expressed,
which, at first blush, would seem to justify the inference that the au-
thority is precisely in point. The case, however, ought to be read in
connection with the peculiar facts which control and modify, to a certain
extent, the language of the judge who delivered the opinion. It was a
bill filed by Dibble, as trustee, by three sewing-machine companies,
*cestuis que trust*, and by Robertson, the patentee, against Augur, the de-
fendant. The bill was founded upon a patent granted to Robertson in
1859 for an improvement in sewing-machines. During the life of the
patent, and in May, 1868, Robertson assigned to Dibble "all his (said
Robertson's) right, title, interest, claim, or demand whatsoever, in, to,
or under the said letters patent." On the same day an agreement was
made between the three companies and Robertson, which was also signed
by Dibble, reciting that the said companies were desirous of purchasing

said patent, and providing: *First*, that Robertson should assign the patent to Dibble, and release the said companies and their customers from all claims for damages for infringing the same; and, *second*, that Robertson was to have the right, in the name of Dibble or otherwise, to sue for all damages for past infringements by others than the said companies, and also to sue for all damages for future infringements by others than the said companies and their customers. On the sixteenth of June, 1868, Robertson assigned to Dibble, as trustee for the three companies and for Robertson, all claims for past infringements. Upon the facts of this case, it was contended that the right to recover for infringements of the patent committed prior to February, 1868, did not pass to Dibble by the two instruments of May 8th, and that, when the bill was filed, the right to recover for such infringements was in Robertson alone, and that the particular remedy was by a suit at law in his name. But the court held that the effect of the two papers of May 8th was to vest in Dibble, as trustee for the three companies, all Robertson's interest in the patent, and also to vest in him as trustee for Robertson, all interest in claims for past and future infringements. "The two papers," says Judge BLATCHFORD, "must be construed in connection with each other." It is true, he says that the words "claim or demand whatsoever, in, to, or under the patent," are not sufficient to cover claims for past infringements; but he adds:

"Besides, the other paper of the same date clearly shows that Robertson did not intend to convey to Dibble, individually or otherwise than as trustee for him, Robertson, any claim for any past infringement of the patent against others than the three companies, * * * and as by the paper of the sixteenth of June, 1868, the title to the claim in respect to the alleged infringements was transferred by Robertson to Dibble, as trustee for the three companies and for Robertson, and as the bill is brought in the name of such trustee, and of the *cestuis que trust,* it will be allowed to stand."

Bearing in mind that this patent was still in force when assigned, and that the assignment was read in connection with the other instrument, reserving the right to the patentee to sue for past infringements, it seems to us that it cannot be treated as a general authority for the proposition that the language of such an assignment can in no case refer to claims and demands for past infringement.

Now let us examine the precise facts of this case. This patent was originally issued to Edwin May, the husband of the plaintiff, who died February 27, 1880. On June 7, 1880, his executor having resigned, one McGinnis was appointed administrator *de bonis non*, with the will annexed. On December 31, 1881, the administrator filed his petition in the probate court of Marion county, Indiana, setting forth that all the estate had been sold, and the proceeds distributed, "except the rights of said decedent in certain letters patent of the United States," and asked leave to sell "said rights" at private sale. Leave was granted to sell "such rights," in compliance with the prayer of the petitioner. The administrator thereupon proceeded to sell the same to the plaintiff, for the sum of $15, and on March 6, 1882, executed to her an assignment in which, after reciting that May, during his life-time, had obtained certain

letters patent for invention and discoveries, as follows, (here inserting a list and description of six patents,) the following language is used:

"I, the said George F. McGinnis, as administrator of the estate of the said Edwin May, deceased, have sold, assigned, transferred, and set over, and do hereby sell, assign, transfer, and set over unto the said Sarah May, all the right, title, interest, claims, and demands whatsoever, which the said estate of said Edwin May, deceased, has in, to, by, under, and through the said improvements, and the letters patent, and extensions thereof therefor aforesaid."

On the seventh day of March, 1882, the administrator filed his report of the sale, and brought the deed of assignment into court for approval; and the court, having examined such report, ratified and confirmed the sale; and, having examined the deed, ratified, confirmed, and approved the same. If the deed was broader in its terms than the petition and order, which were the basis of the sale, such irregularity was evidently cured by the order of March, 1882, ratifying and confirming the deed. This assignment is a contract, and like all other contracts is to be construed so as to carry out the intention of the parties to it. *Hendrie* v. *Sayles*, 98 U. S. 546, 554. Containing, as it did, a recital of the letters patent in suit, *which had already expired when the petition was filed*, there was nothing which could be conveyed by this assignment except the right to sue for past infringements, and unless it be construed to cover this, the assignment *as to that patent* was a nullity. *Bell* v. *McCullough*, 1 Fish. Pat. Cas. 380.

More than this. The words, "all * * * claims and demands whatsoever, * * * under and through the said improvements, and the letters patent," to be given any effect at all, must relate to claims and demands for past infringements, since a bare assignment of the patent would carry with it the right to sue for all future infringements. In the very case of *Moore* v. *Marsh*, 7 Wall. 515, the court observes, at page 522:

"It is too plain for argument that a subsequent assignee or grantee can neither maintain an action in his own name, or be joined with the patentee in maintaining it for any infringement of the exclusive right committed *before* he became interested in the patent. Undoubtedly the assignee thereafter stands in the place of the patentee, both as to the right under the patent and future responsibility."

It is a cardinal rule in the construction of all instruments that effect should, if possible, be given to all parts, and to every clause, *ut res magis valeat quam pereat*. Every word used is presumed to be employed for a purpose, and will not be treated as superfluous or redundant, if it can be given an effect consistent with the general tenor of the instrument. *Waldron* v. *Willard*, 17 N. Y. 466; *Sherman* v. *Elder*, 24 N. Y. 381. For these reasons we are constrained to differ with the learned judge in his construction of this assignment, and to hold that the right to sue for and collect for past infringements was the principal thing contemplated by the parties.

There is nothing of consequence in the remaining grounds of the motion, and a new trial must therefore be denied, and judgment entered upon the verdict.