Helen Russell PIERCE, Executrix of the Last Will and Testament of George Washington Pierce, Deceased, Appellant,

v.

ALLEN B. DU MONT LABORATORIES, INC.

No. 13279.

United States Court of Appeals Third Circuit.

Argued Oct. 7, 1960 and May 22, 1961.

Decided Nov. 29, 1961.

Rehearing Denied Dec. 26, 1961.

See also 278 F.2d 323.

Thomas Cooch, Weston, Mass. (Robert H. Rines, Boston, Mass., on the brief), for appellant.

Floyd H. Crews, New York City (Darby & Darby, Donald J. Overocker, Gordon D. Coplein, New York City, on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.

HASTIE, Circuit Judge.

This appeal has been taken from a judgment of a district court in a patent infringement suit. The trial court held that claims 3, 26, 40, 51, 52, 54–56, and 61–68 of Pierce Patent No. 2,133,642 were invalid for double patenting over the earlier Pierce Patent No. 1,789,496.[1] D.Del.1959, 178 F.Supp. 84. For con-

1. While the pleadings and the trial covered alleged infringement of several related patents, appellant has elected to base this appeal solely upon controverted questions as to the validity and the infringement of '642, which is the basic patent.

venience the numbers of the two patents will be designated throughout this opinion as "'642" and "'496".

Patent '496 was issued in 1931 on an application filed in 1928. It expired some six years before the 1954 filing of the present suit. Patent '642 was issued in 1938 after a considerable history which will be detailed later. That patent expired after the filing, but before the trial, of this case.

## I

A preliminary question must be decided because the inventor George Washington Pierce, who filed this complaint, died before trial. Over the objection of the defendant, the court ordered that Pierce's widow and executrix, Helen Russell Pierce, be substituted as plaintiff. D.Del.1957, 154 F.Supp. 368. Although the defendant prevailed on the merits below, it urges as appellee in this court that we need not and should not reach the merits of the appeal, but rather should rule that the cause of action was extinguished by the death of the original plaintiff. This jurisdictional problem is our first concern.

Appellee's argument, that a cause of action for damages for infringement of a patent, which has expired since that infringement, does not survive the death of the owner of the patent, proceeds in two steps. First, it is pointed out that property in patents exists solely by virtue of federal statutory law and that the incidents of that property are defined and determined by the patent statutes. This is the principle of Crown Die & Tool Co. v. Nye Tool & Machine Works, 1923, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516. Second, it is argued that, since causes of action for patent infringement thus depend upon federal statutes for existence and definition, they must lapse with the death of the patent owner, unless a federal statute affirmatively provides for their survival. This is a non sequitur. Certainly, no such conclusion is required by the Crown Die case, which did not involve the problem of the effect of the death of a patentee upon the statutory right to

collect damages for past infringement. Moreover, it is a necessary, if not articulated, premise of appellee's argument that some rule or principle of law outside of the patent statutes cuts off the cause of action when the patent owner dies. This must be the case simply because the patent law itself gives no guidance on this question. Whether the conclusion shall be that the right survives or that it does not, the controlling rule must be derived from a source other than the patent statutes.

In practice, federal courts, required to decide whether various federal statutory causes of action survive, have been explicit and consistent in holding that, where the right-creating statute says nothing about survival, resort to common law conceptions as evolved in English and American decisions is appropriate. Van Beeck v. Sabine Towing Co., 1937, 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685; Schreiber v. Sharpless, 1884, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65; Sullivan v. Associated Billposters & Distributors, 2d Cir., 1925, 6 F.2d 1000, 42 A.L.R. 503; Walsh v. New York, N. H. & H. R. R., C.C.D.Mass.1909, 173 F. 494, aff'd, 1912, 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327. Such inquiry discloses a common law rule of survival, originally applied to a limited group of damage claims for tortious invasion of property rights, but subsequently broadened toward sanctioning the survival of claims for redress of injuries to monetary interests generally. Van Beeck v. Sabine Towing Co., supra; Kirk v. Commissioner of Internal Revenue, 1st Cir., 1950, 179 F.2d 619, 15 A.L.R.2d 1031.

This approach has resulted in rulings that various federal statutory causes survive without statutory stipulation. The question of survival arises frequently in civil suits for injury to business caused by violations of the antitrust laws. These claims are held to survive. Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4th Cir., 1942, 128 F.2d 645; Moore v. Backus, 7th Cir., 78 F.2d 571, 101 A.L.R. 379, cert. denied, 1935, 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455; Sul-

livan v. Associated Billposters & Distributors, supra. In a different area, the Supreme Court has held, and this court has recognized, that a dependent's right under the Merchant Marine Act, 46 U.S.C.A. § 688 and the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. to recover the pecuniary loss he has suffered through the death of the decedent, survives the death of the dependent and may be exercised by his administrator. Van Beeck v. Sabine Towing Co., supra; Wade v. Rogala, 3d Cir., 1959, 270 F.2d 280, 284.[2]

██ Of course, the principle "that a patent is property, protected against appropriation * * * by individuals * * * has long been settled." See Hartford-Empire Co. v. United States, 1945, 323 U.S. 386, 415, 65 S.Ct. 373, 387, 89 L.Ed. 322. For purposes of survival we can see no reason for putting actions for damage suffered through patent infringement on a different basis from the above cited invasions of other property rights.

As a separate point appellee argues that the often stated rule that penal claims do not survive is applicable here because the patent statute under which this suit is brought authorizes the recovery of treble damages. However, this argument has not prevailed in the above mentioned situation of treble damage suits under the antitrust laws. Barnes Coal Co. v. Retail Coal Merchants Ass'n, supra. Moreover, the statute involved in the present case lends itself to the separation of the basic compensatory award of actual damages from any permissible additional award of punitive character. The statute provides primarily for the award of "damages adequate to compensate for the infringement". 35 U.S.C. § 284, 1958. Thereafter, it au-

thorizes "the court * * * [to] increase the damages up to three times the amount found or assessed". Therefore, even assuming that the severable provision for the discretionary multiplication of damages is penal, this affords no justification for cutting off the basic right to compensatory recovery. In the posture of this case no more than that need be decided.

Appellee makes a final argument that the claim for damages for past infringement does not survive because the law does not permit a patentee to assign such a claim apart from the patent itself. However, any considerations of policy which oppose the separation of a cause of action for past infringement from the right of present enjoyment of a patent cease to be relevant after the expiration of the patent has eliminated the right of present enjoyment. It is not surprising, therefore, that such authority as there is on the point supports the assignability of a past infringement claim after the patent has expired. Ross v. City of Fort Wayne, 7th Cir., 1894, 63 F. 466; Tompkins v. St. Regis Paper Co., D.C.N.D.N.Y. 1915, 226 F. 744, aff'd 2d Cir., 1916, 236 F. 221; May v. Saginaw County, C.C.E.D.Mich.1887, 32 F. 629. Thus, it does not help appellee to borrow the rules of assignability as guides to the determination of survival.

Finally, on this entire question of survival no policy consideration has been suggested which would make it unfair to allow a claim for past infringement to be exercised by an administrator in the interest of the estate of a deceased patentee. It is just as undesirable to permit a patent infringer to retain the fruits of his wrongdoing in this situation as it is when the patentee himself is suing. Compare Dellaripa v. New York, N. H. &

2. More recently, one court of appeals has extended the Van Beeck result to allow a survivor's administrator to recover for an employee's pain and suffering under Section 9 of the Federal Employers' Liability Act. Dellaripa v. New York, N. H. & H. R. R., 2d Cir., 1958, 257 F.2d 733, 72 Harv.L.Rev. 558 (1959). In so doing, however, the court completely rejected the traditional distinction between "personal" and "property" rights as concerns survival. 257 F.2d at 735. We are not asked to go this far in the present case. See also Baumet v. United States, 2d Cir., 1949, 177 F.2d 806, cert. denied, 1950, 339 U.S. 923, 70 S.Ct. 611, 94 L.Ed. 1346.

H. R. R., 2d Cir., 1958, 257 F.2d 733. Thus broad policy and technical analysis both indicate that appellee's contentions are not sound.

We are the more confident of the correctness of our view of this matter because the same result has been reached in carefully reasoned opinions by two of the three district courts which have fully analyzed the problem. Armstrong v. Allen B. Du Mont Labs., Inc., D.Del.1955, 137 F.Supp. 659; Armstrong v. Emerson Radio & Phonograph Corp., S.D.N.Y. 1955, 132 F.Supp. 176. Contra Van Choate v. General Electric Co., D.C.D. Mass.1917, 245 F. 120.

## II

We come now to the merits of the controversy. Was the trial court correct in ruling patent '642 invalid for double patenting over the patentee's earlier '496? Both patents embody Pierce's invention of a new method and apparatus utilized in electrical circuits to produce and sustain oscillations at more constant frequency than had theretofore been achievable, particularly in high frequency systems. Because inability to control frequency variations had hampered the development of high frequency radio communication, the effective incorporation of Pierce's invention in both transmitting and receiving circuits was a major achievement in an important field. Pierce's essential teaching was that the introduction of a two electrode piezoelectric crystal of his devising into a vacuum tube circuit as a mechanical vibrator accomplished the desired stabilization. This novel and unquestionably inventive device and procedure for frequency control in oscillating electrical systems will hereafter be called the Pierce oscillator. The patent infringement alleged in this case is the use of this device by appellee in two types of television transmitters, in a mobile transmitter-receiver and in a time calibrator.

As early as 1924 Pierce filed a patent application containing many claims, both broad and narrow, covering the Pierce oscillator in various combinations and asserting many beneficial effects. In 1928, after the elimination of certain claims which are not relevant here, the still pending original application contained all of the claims which were later to be divided and granted separately in patent '496 and patent '642. Pierce then eliminated three of the remaining claims from this pending original application and incorporated them in a divisional application upon which patent '496 issued in January 1931. For present purposes it is sufficient that this first issued patent claimed a radio transmitting and receiving system wherein the new stabilizing Pierce oscillator was joined in effective combination with other elements of such a system which, admittedly, were old and familiar in the art.

More than a year before patent '496 issued, the patent office had allowed what remained of the original application, including a generic claim to the Pierce oscillator as a means of frequency stabilization in any oscillating system. Indeed, it is clear and not disputed that as early as September 1929 Pierce could have obtained a comprehensive patent, claiming and protecting his oscillator generically, merely by paying a final fee on his approved original application. However, he elected not to pay this fee within the prescribed time. Instead, he allowed this opportunity to pass and later made a timely renewal of his application as the patent law authorizes. Counsel representing the Pierce interests now tells us that Pierce thus voluntarily delayed the issuance of a patent on his generic claim because of his desire to have an interference declared with a rival inventor, one Miller, whose claims conflicted with those of Pierce and were a cloud on his title to the new oscillator. In any event, Pierce renewed his basic application in 1930. An interference was declared in 1932 and the dispute with Miller was finally adjudicated in 1938 when this court ruled that Miller had derived his alleged invention from Pierce. Miller v. National Broadcasting Co., 3 Cir., 1935, 79 F.2d 657. Thereafter, in October 1938 a patent on the remaining claims of the original

Pierce application, including the generic claim to the Pierce oscillator, was issued as patent '642. The infringement alleged in the present action occurred less than seventeen years after the issuance of this patent but after the expiration of the earlier patent '496.

■ Both parties to the present litigation recognize that under our patent system, based as it is upon statutory monopoly limited to a seventeen year period, it is an inherent principle that an inventor is not entitled to the issuance of two patents at different times for the same invention. However, in administering the rule against double patenting it is not always clear what constitutes a single invention.

■ Perhaps the most frequently cited statement of the rule appears in Miller v. Eagle Mfg. Co., 1894, 151 U.S. 186, 198, 14 S.Ct. 310, 315, 38 L.Ed. 121, where the Supreme Court said:

"* * * no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character, than the specific claims, contained in the prior patent, is also void; but that where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained.

"In the last class of cases it must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent from that covered by the first patent; in other words, it must be something substantially different from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent. If the case comes within the first or second of the above classes, the second patent is absolutely void."

Since Miller v. Eagle, courts have repeatedly ruled that an inventor's separate applications embodying the same inventive concept afford proper bases for the issuance of separate patents at different times only if one of them also embodies an additional inventive concept not present in the other. In other words, the difference between the claims of the two applications must itself be inventive. Weatherhead Co. v. Drillmaster Supply Co., 7th Cir., 1955, 227 F.2d 98; In re Woodsome, 1926, 56 App.D.C. 138, 10 F.2d 1003; Palmer Pneumatic Tire Co. v. Lozier, 6th Cir., 1898, 90 F. 732; In re Copeman, 1943, 135 F.2d 349, 30 CCPA 962; In re Laughlin, 1931, 48 F.2d 921, 18 CCPA 1239; Ex parte Gump, Pat.Off. Bd.App., 1948, 83 U.S.P.Q. 351. But cf. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2d Cir., 1927, 22 F.2d 259.

A typical application of this rule appears in American Bell Tel. Co. v. National Tel. Mfg. Co., C.C.D.Mass.1901, 109 F. 976, aff'd on other grounds, 1st Cir., 1903, 119 F. 893. The inventor's original patent application contained a generic claim for a novel telephone transmitter. But before final action on this generic claim, a patent was granted on a co-pending divisional application for a telephonic communication system incorporating this transmitter as its only novel element. In holding that a second patent could not lawfully be granted on the transmitter itself, the court analyzed the situation in a way that is helpful here.

"[The first patent] confers a monopoly of the transmitter with a restriction or limitation. The patent in suit confers a monopoly without restriction. The patents are nevertheless both for the 'same invention,' both in a legal and a practical sense. [The earlier patent] * * * presents the familiar case of an inventor taking a patent with an unnecessary limitation. The commissioner has exhausted his power, and

cannot afterwards give him a general grant for all uses. The argument that the use of the transmitter or of the receiver alone would not infringe * * * [the earlier patent] is immaterial. It does not prove that the claim is for a * * * [different] invention, but merely that the claim does not cover all the uses which might have been covered, had the patentee not chosen to take a claim for a restricted use. That the two patents are not coextensive does not affect the application of the rule against double patenting." 109 F. at 1033.

■ Similarly, in the present case the Pierce oscillator is the only new and inventive feature of the combination patent '496. Moreover, the Pierce oscillator performs no different function and achieves no significantly different result in this combination than when used in any other circuit. Thus, invention inheres not in any unusual characteristic or result of the particular combination, but merely in the normal functioning of a novel component. Yet, patent '642 was issued thereafter for this very component in its general adaptation to its normal role. The controlling doctrine, elaborated in the excerpt we have quoted from the American Communications case is stated more tersely in Palmer Pneumatic Tire Co. v. Lozier, supra: "One cannot extract an essential element of his invention from a former patent, without which the former patent would not have been granted, and make it the subject of a subsequent patent." 90 F. at 744. This line of reasoning has already led the Court of Appeals for the First Circuit to find the patent in suit invalid. Pierce v. Hewlett-Packard Co., 220 F.2d 531, cert. denied, 1955, 350 U.S. 833, 76 S.Ct. 69, 100 L.Ed. 744. But cf. Pierce v. Aeronautical Communications Equipment, Inc., 5th Cir., 1958, 255 F.2d 458.

But even if the foregoing analysis is persuasive in most cases where successive patents have reflected but one inventive concept, it is argued that the second patent should be granted where circumstances beyond the applicant's control have resulted in patent office approval of a divisional application before administrative action has been completed on an earlier or simultaneously filed basic application. The point is made that such administrative delay, for which the applicant has no responsibility and over which he has no control, should not deprive him of the second partially overlapping generic claim needed to give him full protection for his invention pursuant to his initial application, even though the more restricted monopoly first granted to him is thereby extended somewhat beyond its original term. This argument is said to be reinforced in this case by the additional fact that Pierce eliminated the claims for a radio transmitting and receiving system from his original application and incorporated them in a divisional application only after a patent examiner had made it clear that he was unwilling to approve a patent on the original application unless there should be such division.

Where such protection for a longer time than the patent law contemplates has in fact resulted solely from administrative delay in the patent office, it may well be that a balancing of the equities will justify the allowance of both patents. Fehr v. Activated Sludge, Inc., 7th Cir., 1936, 84 F.2d 948; see Union Typewriter Co. v. L. C. Smith & Bros., C.C.W.D.Pa. 1909, 173 F. 288, 297, aff'd, 3d Cir., 1910, 181 F. 966. Of course the patentee's equitable position is strengthened where it appears as an additional fact that the patent office itself has required a division that resulted in harmful delay.[3] In most such cases the harm of double pat-

3. The court below found that "at no time did the Examiner actually order a division". Rather, "seeing that he would either have to divide or suffer a final rejection by the Examiner and appeal therefrom, [the appellant] voluntarily divided". Whether a formal administrative order requiring a division must be appealed and judicially affirmed before the second of the resultant two patents

enting will be slight because administrative delay in allowing the earlier application is not likely to be long enough to extend the original monopoly much beyond its proper seventeen year term.

But this is not the present case. Here, the inventor, by merely paying his final fee could have obtained his generic patent more than a year before he actually obtained the narrower patent '496. He made a considered election to postpone his acquisition of the broader monopoly until he was sure that its exploitation would not be hampered by conflicting claims of a rival inventor. Yet, somewhat later, when the divisional application, which certainly was no less embarrassed than the generic one by the Miller claims, won patent office approval he paid his final fee promptly and accepted the patent. This, therefore, is not a case where administrative action prevented the inventor from having his more comprehensive application patented first, but rather where the choice has been the inventor's, dictated by his own judgment of possible economic advantage. We think these circumstances are not such as to justify an exception to the general rule and policy against double patenting. Cf. Miller v. Eagle Mfg. Co., supra.

█ One additional observation seems pertinent. It was the view of the court below that the combination patent '496 gave the patentee some measure of protection for the Pierce oscillator as such, since the oscillator was the only inventive feature of the claimed combination. Were this point essential to our decision it would be necessary to decide whether this view can be squared with recent decisions of the Supreme Court limiting the protection which a patent claiming only a particular combination can give to a constituent element of that combination. Aro Mfg. Co. v. Convertible Top Replace-

ment Co., 1961, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592; Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 1944, 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396; Mercoid Corp. v. Mid-Continent Investment Co., 1944, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376. We decide merely that patent '496 protected Pierce in the use of the Pierce oscillator in radio transmitting and receiving systems. We have already pointed out that it is the extension of this monopoly beyond its proper seventeen year term which invalidates the generic patent.

One possibility of avoiding this unwarranted extension of monopoly has been suggested; namely, that the later generic patent may be held valid except that it shall not be deemed to protect such adaptations of the invention to radio transmitting and receiving as have already been covered by the earlier combination patent. A rational patent system might include such a refinement. Indeed, such a reconciliation of partially overlapping successive patents is made where an inventive difference is found to exist between their claims. E. g., Washburn & Moen Mfg. Co. v. Norwood (The Barbed Wire Patent), 1892, 143 U.S. 275, 12 S. Ct. 450, 36 L.Ed. 161. But, where there is no inventive difference between the claims of the two patents the partial validation of the more comprehensive claims of the second overlapping patent seems unwarranted. Ex parte Gump, supra. Rather, the patentee who has justification for supplementing his patented claims without embodying any new invention is left to the established reissue procedure for enlarging his monopoly without extending its term. See Union Typewriter Co. v. L. C. Smith Bros. Typewriter Co., 3d Cir., 1910, 181 F. 966, 969.

█ Finally, appellee complains that the court below denied its motion for at-

---

is protected against a claim of double patenting and consequent invalidity, is a matter of dispute in the cases. With National Tube Co. v. Steel & Tubes, Inc., 3d Cir., 1937, 90 F.2d 52, and In re Cady, 1935, 77 F.2d 106, 22 CCPA 1190, contrast Remington Rand Business Serv-

ice, Inc. v. Acme Card System Co., 4th Cir., 71 F.2d 628, cert. denied, 1934, 293, U.S. 622, 55 S.Ct. 236, 79 L.Ed. 710, and In re Woodsome, supra. See also In re McKee, 1935, 79 F.2d 905, 23 CCPA 717.

**330**

torneys' fees under 35 U.S.C. § 285. In denying this motion the court quite properly found "that no bad faith on the part of the plaintiff has been shown". This has been a hard and fairly fought case involving difficult and doubtful points of law. It certainly discloses no such imposition or unfairness as the statute contemplates in its limited authorization of counsel fees. Cf. Hardinge Co., Inc. v. Jones & Laughlin Steel Corp., 3d Cir., 1960, 275 F.2d 37.

The judgment will be affirmed.