

Affirmed.

33 C.C.P.A. (Patents)

## Application of HUTCHISON.

### Patent Appeal No. 5123.

Court of Customs and Patent Appeals.

March 6, 1946.

Morrison, Kennedy & Campbell, of New York City (Luther E. Morrison, of New York City, and Edmund H. Parry, Jr., of Washington, D.C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C., (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming decisions of primary examiners rejecting certain product claims of appellant's application, serial No. 416,-334, filed October 24, 1941, relating, as recited in the specification, "to a process for immunizing hygroscopic sheet materials against dimensional variations and to the product thereof."

As hereinafter more fully explained, the claims here involved are directed to the particular kind of laminated material from which templates—that is gauges or patterns for use as guides in forming the desired finished article—may be made.

The claimed invention was described in the decision of the board as follows:

"It is disclosed that applicant proposes to immunize hygroscopic sheet material, such as ordinary drawing paper and the like, against dimensional variations resulting from changes in atmospheric moisture by adhering them to backing elements which themselves are immune to such changes, for example, metal or glass. It is disclosed that a water-proof thermoplastic is used as an adhesive to effect a bond between the sheet material and the backing element. Claim 42, for example, calls for an article of manufacture as a laminated unit com-

prising a backing element surfaced with paper having an exposed outer surface to receive the design and composed of metal stock of requisite thickness and rigidity to become the finished template and capable of being machined, the surfacing paper bonded to the metal backing element by a waterproof heat-set and heat-resistance adhesive."

We also quote the following from the brief of the Solicitor for the Patent Office:

"This material comprises a sheet of metal to which a sheet of drawing paper or a layer of photographic emulsion is secured by means of a heat-settable water-proof adhesive. Since it is intended that this composite sheet shall be machined to form a template, the adhesive selected must, of course, be one which will not soften at the temperature produced by machining. The fact that the paper is uniformly secured to the metal prevents distortion or change in size of the paper due to changes in moisture content, and thus preserves the dimensions of figures on the drawing paper or photographic layer."

Five process and nine product claims stand allowed.

There are six claims (all for the product) on appeal. They are numbered, respectively, 42, 43, 54, 56, 57, and 58.

It appears that because of certain differences in the claims involved in the application procedure was had in the Patent Office under what is described in the statement of one of the examiners as the "Dual Prosecution Practice," claim 58 (as were the allowed claims) being passed upon by an examiner in Division 7, which division had general jurisdiction of the application, while the other claims were passed upon by an examiner in Division 55. We understand from statements made during the oral arguments before us that the "Dual Prosecution Practice" was instituted comparatively recently. This is the first case of that character to come before us. The practice itself is immaterial to any issue here presented. The board, of course, had before it statements of two examiners, but each was confined to the particular claims before the different divisions. The references cited by both examiners were the same, and we may say that whatever may have been the situation with respect to the allowed claims, so far as we can discern, appealed claim 58 might very well have been considered in the same division

where the other appealed claims were passed upon.

The application as filed recited that it was a division of a co-pending application, 402,128, filed July 12, 1941, and, by an amendment entered July 16, 1943, it was stated that the parent application "matured into patent No. 2,311,547, dated February 16, 1943." Appellant's brief refers to the patent a number of times, but no copy of it was included in the record certified to us and we find no reference to it, or to the parent application, in any of the decisions of the tribunals of the Patent Office, nor in the reasons of appeal. The brief of the Solicitor for the Patent Office states that it "apparently involves a method of making templates from laminated material, while the claims here involved are directed to the laminated material from which the templates are made." It seems to be the position of appellant that the here involved claims should be allowed "to supplement the protection afforded" by the issued patent.

It may be said that in the brief for appellant it is stated, in substance, that the laminated material for which patent is sought, "While capable of more general application," is particularly designed for the manufacture of templates used in the mass production of airplane parts, and the brief describes in considerable detail the matter of riveting the fuselage and wings of aluminum alloy sheets to each other and to the frame. It is said "The rivets must freely pass through holes in the sheets, which attach to other sheets and to the frame, requiring that the holes be drilled with great care and accuracy." This, of course, is a general statement of a specific necessity in the manufacture of modern airplanes, and appellant asserts that the laminated material described in his specification when used in templates renders them immune from fluctuation or variation in dimension (which sometimes must be accurate to "a thousandth of an inch") by reason of temperatures, atmospheric moisture and other conditions which affect metal and paper.

Neither the specification nor the claims of the application mention airplanes. Much of the specification defines method but the product is also defined.

As has been stated, appellant has been allowed in this divisional application five process claims and nine product claims. Apparently (we accept the statements in

the briefs before us) he was also allowed method claims in the patent based upon the parent application.

We are not concerned, of course, with the allowed claims in either the patent or in this application. The sole question for our determination is whether the six article claims on appeal were properly rejected below, and this we pass upon without further reference to, and without comparing them with, the claims of the patent or the claims which stand allowed in this application.

The board quoted claim 42 (prosecuted in Division 55) as "an example" of all the claims. It paraphrased claim 58 (prosecuted in Division 7) but did not quote the text.

We here quote both (and in quoting them follow the italicization used by appellant in his brief to indicate the limitations which he insists render the claims patentable):

42. As an article of manufacture, *adapted for use in the fabrication of a metal template or the like suitable for metalworking operations,* a laminated unit comprising a backing element surfaced with paper having an exposed outer surface to receive the template design, said *backing element being composed of metal stock possessing the requisite thickness and rigidity to become the finished template and capable of being machined under heat generating conditions in accordance with the template design,* and said surfacing paper being bonded to the metal backing element by *a water-proof heat-set and heat-resistant adhesive which renders the paper immune from plane dimensional variations resulting from changes in atmospheric moisture,* and said adhesive being *set under temperature and time conditions which produce a bond between the surfacing paper and the metal backing element that is unaffected by the heat generated during said template machining operations,* the heat-resistant temperature of the heat-set adhesive being well *above 212° F.*

"58. As an article of manufacture, *adapted to be adhered to a metal backing element for use in the fabrication of a template or the like suitable for metalworking operations,* which metal backing element possesses the *requisite thickness and rigidity to become the finished template and which is capable of being machined under heat generating conditions in accordance with the template design* pro-

duced thereon after the adherence of the article, a flexible sheet material having one surface coated with an *unexposed light-sensitive photographic emulsion* for the printing of the template design and the opposite surface coated with a *water-proof heat-setting and heat-resistant adhesive which, once set, renders the material immune from plane dimensional variations resulting from changes in atmospheric moisture, the temperature and time conditions required for the setting of the adhesive being such that, when the sheet material is bonded to the metal backing element, said bond will be unaffected either by the solutions used in the processing of the photographic emulsion after the printing exposure or by the heat generated during said template machining operations,* the heat-resistant temperature of the heat-set adhesive being well *above 212° F."*

In the introductory clause of claim 43 it is stated that the article is adapted for use in a photographic process (a feature present in other of the claims) and the claim also states that the thickness of the metal is "many times the thickness of the drawing paper." Claim 54 is drawn to a coated paper layer "adapted to be adhered to a metal backing." Claim 56 describes the metal as steel stock having a thickness of one sixteenth of an inch. No thickness is mentioned in the specification and the one sixteenth of an inch definition seems to have been inserted by amendment during the prosecution of the application. Claim 57 calls for photographic paper instead of drawing paper.

The examiner in Division 7 (which had general jurisdiction of the application) in rejecting claim 58 cited the following patents as references:

Linderman, 2,000,528, May 7, 1935.

Rojas, 2,318,184, May 4, 1943.

Moxon (Br.), 197,051, May 10, 1923.

He applied a double rejection, that is "on Linderman alone and also on Rojas or Moxon in view of Linderman."

The examiner in Division 55, in rejecting the other claims, cited the same references.

He first discussed claim 42 and held it to be anticipated in the "Rojas, Moxon and Linderman" patents, and, in substance, held the same with respect to claims 43, 54, 56, and 57.

The board followed generally the decisions of the respective examiners, but spe-

cifically mentioned (although it did not overrule the others) only Linderman in affirming the examiner's rejection of claim 58.

In the brief for appellant the several claims are quoted, the limitations which his counsel regards as lending patentability to them being italicized, as in claims 42 and 58 quoted, supra, and each limitation is discussed, in connection with the teachings of the cited prior art. We have studied these with much care but we do not deem it necessary to set forth all the refinements embraced in appellant's arguments. The claims are similar to each other and obviously they stand or fall together. Each of them contains functional statements which may not be regarded as limiting the claims, they being article claims.

■ Taking first claim 42 for analysis and comparing it principally with the Moxon patent, the first phraseology italicized by appellant is the introductory clause to the effect that the laminated article is *"adapted"* for use in making a template or the like. This does not constitute a limitation in any patentable sense, but if it were in that category, it is anticipated by Moxon who teaches that his laminated sheet (made up of layers of paper and metal, united by an adhesive) may be used in making a template.

The second clause italicized is that relating to the composition of the backing element—metal stock—referring to its characteristics of thickness and rigidity. The Moxon patent discloses the use of a "thin" metal sheet which "may consist of an alloy of zinc and aluminium" to which "the [drawing] paper may be affixed in close contact with the sheet by means of an appropriate adhesive such as a waterproof gum * * *."

The third and fourth italicized clauses relate to the adhesive by which the paper is bonded to the metal backing, the manner of its setting, etc., to prevent variations resulting from changes in atmospheric moisture and from heat generated during the template machining operations. No particular adhesive material is named.

■ It seems obvious to us that all features of claim 42 are anticipated by the Moxon patent. Heat-set adhesives are admittedly old and the selection of one suitable for use in appellant's article would not involve invention. Machining necessarily generates heat and this would be present in Moxon.

The concluding part of the claim (a part common to all the appealed claims) refers to the heat resistant temperature of the heat-set adhesive as "being well above 212° F." This is not mentioned in the specification and we find nothing to indicate that it is a critical element.

The limitations which appellant emphasizes in claims 43, 54, 56, and 57, while couched in somewhat different phraseology, do not seem to differ in any patentable sense from those in claim 42.

The feature of photographic paper is definitely shown by Linderman, who also shows that the adhesive must be of a character resistant to the solutions used in the treatment.

So far as the feature of "steel stock" mentioned in claim 56 is concerned, it may be said that the specification does not define any particular metal, and the kind used would appear to be a matter of choice, and the "thickness" feature described in the claim is not shown to be critical.

With respect to claim 58, quoted supra, it will be observed that, in the final analysis, it is specific only to photographic paper coated with adhesive, the metal plate (as is stated in the brief of the Solicitor for the Patent Office) being "mentioned inferentially" and not positively included as an element.

We agree with the tribunals of the Patent Office that claim 58 fails to define invention over Linderman, particularly in view of the teachings of the other references.

Appellant has not convinced us that there was error in the rejection of the several appealed claims, and the decision of the board is affirmed.

Affirmed.