50 CCPA

**Application of Carlyle M. ASHLEY and William H. Roberts.**

**Patent Appeal No. 6947.**

United States Court of Customs and Patent Appeals.

April 25, 1963.

Harry G. Martin, Jr., Syracuse, N. Y., for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals which affirmed the examiner's final rejection of claims 1 to 3, 7 to 9, and 15 of appellants' application.[1] All of the claims of the application were found to be unpatentable over the prior art.

The invention disclosed in the application relates to a room unit for use in an induction type air conditioning system installed in a multi-room building. The conditioned air is supplied from a central station to each room unit at high velocity and at high pressure through small conduits. Each room unit contains a heat exchanger through which cold or hot water may be passed. The stream of conditioned air from the central station, called "primary" air, is discharged into the room unit upwardly through a series of nozzles at such a high velocity that room air is caused to enter

[1.] Ser. No. 559,046, filed January 13, 1956, for "Air Conditioning Units."

through the open bottom of the unit and flow upwardly past the heat exchanger. The room air induced to enter through the open bottom is called "secondary" air. The two streams of primary and secondary air mix together in the unit and are discharged upwardly into the room.

Prior to the work done by appellants, room units of the general type described were connected in *parallel* to the central source of conditioned air. In the prior art arrangement a separate duct was required between the central source and each room unit. Appellants developed a system in which the units are connected in *series* so that the room units are connected together instead of directly to the central source. The savings in ductwork are considerable. Claims have been allowed to appellants drawn to the system as a whole in a companion application.[2] Only the decision of the board in the companion case has been reproduced in the instant record.

The present application is specifically concerned with the room unit which is adapted to be connected to a similar unit in another room. The unit is so adapted by using a plenum member comprising two separate chambers. The first chamber is connected to the first chamber of a similar unit in the series in such a manner that the primary air flows through the first chamber of each unit. A portion of the primary air is drawn from the first chamber into a second chamber for ultimate discharge into the room. By having two chambers in the plenum member, primary air may be passed through the unit without interfering with the air balance of air discharged in the unit.

Claim 1 is representative of the claims in issue and reads:

"1. In an air conditioning unit for use in the air conditioning multi-room buildings, the combination of a casing[,] a base unit including a plenum member in the casing, said plenum member compris-ing two separate chambers the first chamber being adapted to be connected to the first chamber of a similar unit without interference with the air balance of air discharged in the unit, means providing passage of treated air from the first chamber to the second chamber, means regulating passage of air from the first chamber to the second chamber to maintain substantially a desired pressure within the second chamber, said first chamber being adapted to be connected through a runout to a source of supply of primary air, air discharge means connected to the second chamber, a heat exchange member in the casing adapted to be connected to a source of supply of heat exchange medium, discharge of a primary air through the discharge means inducing a stream of secondary air from the area being conditioned through the heat exchange member in heat exchange relation with medium passing therethrough to mix in the casing with the primary air being discharged from the second chamber, and means in the casing for discharging the mixture of primary and secondary air within the area being conditioned."

The Board of Appeals relied on the following references in affirming the examiner's rejection:

| | | |
|---|---|---|
| Palmer | 2,287,268 | June 23, 1942 |
| Meek | 2,492,757 | December 27, 1949. |

The Meek patent is the primary reference. It shows an air conditioning system for a plurality of areas to be conditioned with a unit in each area. Each unit includes a casing which contains a coil or radiator disposed angularly at the bottom portion of the casing, a room air inlet, a damper regulating the flow of room air, and a plenum member for high velocity, high pressure, primary air. The primary air from the plenum is discharged upwardly into the room

2. Ser. No. 559,045, filed January 13, 1956, for "Air Conditioning Systems."

through nozzles, inducing a flow of secondary air past the coil or radiator to mix with the primary air stream. The drawings in Meek indicate that the plenum chamber is provided with an opening at either end so that the duct containing primary air may be attached to either the right or left side of the unit. The unused opening is blocked off by what appears to be a cap over the flanged opening.

The Palmer patent discloses an air conditioning system comprising a central source of conditioned air with ducts to carry the air under pressure to multiple zones. The room unit includes ejector nozzles which induce a flow of secondary air through the unit and past a heat exchanger to mix with the primary air. The branch duct leading to the room unit contains a damper, controlled automatically by a room hygrostat, for varying the volume of secondary air through the unit. A pressurestat in the main duct maintains a constant air pressure to the units to prevent the adjustment of air to one unit from affecting the performance of other units.

The board was of the opinion that Meek shows all of the claimed elements except for the requirement that the plenum member comprise two chambers, superposed in some claims, with means to regulate the flow of air therebetween so as to control the air pressure in the chamber which supplies the nozzles. However, Palmer, according to the board, shows a valve which regulates the supply of conditioned air to the nozzle. The use of such a valve in the Meek plenum "involves a mere exercise of skill in view of [Palmer]." The reasons advanced are that Meek shows separate valves to control the supply of hot and cold water and the use of a separate valve to regulate the supply of conditioned air is an obvious extension of this teaching; that Meek uses a damper within the unit to regulate the secondary air which is suggestive of a similar location within the unit for a valve regulating primary air; that the particular location of the valve regulating primary air involves merely a design choice so long as the valve regulates the air pressure supplied to the nozzle unit.

Appellants take issue with this reasoning of the board, contending that Palmer merely shows a butterfly damper in a branch duct which is not the same as appellants' two-chamber plenum member with regulating means. They argue that Meek only teaches the use of a valve to regulate the quantity of water supplied to the coil, which, even when combined with Palmer, fails to suggest the claimed structure.

In addition, appellants contend that "the Board of Appeals in its prior decision in the companion application held that the *specific room unit* involved here imparted patentability to the *system.*" (Appellants' emphasis.) Therefore, the specific room unit is said to be patentable per se.

We are of the opinion that the board properly sustained the examiner's rejection. While the claims distinguish structurally over Meek in the plenum member and regulating means, the distinctions are not beyond the exercise of ordinary skill. Merely extending the primary air supply duct into the plenum member of Meek would provide two chambers. The concept of regulating the flow of conditioned air from the duct to the chamber supplying the nozzles is taught by Palmer. It would seem that the most that appellants can claim is that they have provided the damper of Palmer in the Meek air conditioning unit at what constitutes an extension of the duct within the plenum member, rather than in the duct outside the plenum, to form another chamber in the plenum. In appellants' structure the first chamber of the plenum member is, in effect, a duct adapted to pass the primary air to the conduit leading to the next unit in the series. Regulating means are used to draw off a portion of the air for the unit through which the primary air is passing. Palmer suggests a regulating means for controlling the supply of primary air to each unit. It would not be unobvious to add

948

this type of regulating means to the Meek unit which has regulating means for controlling temperature and secondary air. We note that the claims on appeal do not recite any particular type of regulating means between the two chambers of the plenum member, so presumably a butterfly damper, as in Palmer, was contemplated as within the scope of the invention. Appellants' argument that a butterfly damper is not as effective as other regulating means is not persuasive.

While the claims state that the first chamber is " * * * adapted to be connected to the first chamber of a similar unit without interference with the air balance of air discharged in the unit * * *," the board correctly held that this phrase does not limit the claim to the system or import a second unit into the claim. In re Dean, 291 F.2d 947, 48 CCPA 1072.

Appellants' disclosure indicates that the opening in the first chamber of the plenum member adapted to connect to another unit "may be closed by a plug." Meek shows an opening in both end plates of the plenum member to adapt it for either right hand or left hand installation in a room. These openings "adapt" the plenum member for connection with other elements of the system as recited in the claims. Although the openings in both ends of the Meek plenum do not show the concept of a series arrangement in an air conditioning *system*, the claims here in issue are not concerned with the system but rather with the specific unit.

■ The decision of the board in the companion application does not support appellants' contention that the specific room unit was there indicated to be patentable per se. The issue was not the same in the companion application as it is here. There, as noted by the solici-

tor, the issue was whether Palmer would suggest a flow regulating means for maintaining the pressure balance of primary air throughout a series of connected room units. The claims here are limited to a single room unit. It would appear that if appellants are correct in asserting that the same invention is present in the instant application and the companion application, an issue of double patenting would arise. However, it is clear to us that the patentability of the specific room unit is a separate issue from the patentability of the system as a whole. The decision of the board in the application drawn to the system as a whole does not control the decision as to patentability of the claims in a separate application drawn to the specific room unit. It is axiomatic that the patentability of a claim may not be based upon the allowance of other claims in another application.

■ We are called upon to decide whether the claims on appeal are patentable over the prior art. What the Board of Appeals decided in another application, drawn to what appellants must, of necessity, concede to be a separate invention, is not relevant to the issue before us. Nevertheless, we find without substance appellants' assertion that the board misinterpreted its decision in the companion application. The board in the companion case stated that the series supply as well as the regulating means between chambers was significant. It does not necessarily follow from the fact that the combination was considered to be patentable in one application that a subcombination within the combination is separately patentable. In re Walker, 213 F.2d 332, 41 CCPA 913.

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Affirmed.