Application of Homer E. ALLEN, Deceased, by Helen M. Allen, Executrix.

Patent Appeal No. 7351.

United States Court of Customs and Patent Appeals.

April 8, 1965.

Rehearing Denied June 17, 1965.

Almond and Martin, JJ., dissented.

Arnold G. Gulko, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from a split decision of the Board of Appeals affirming a rejec-

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

tion of all claims, 1–4, of application serial No. 36,094, filed June 14, 1960, for "Waler Brackets." The application is stated to be a "continuation" of a co-pending application, serial No. 715,772, filed February 17, 1958, "filed in the name of the common inventor, now deceased, and full ownership is vested in the same corporation."

The specification also contains the statement, which is true, that "All the subject matter claimed in this application is fully illustrated and described in said pending application."

Correctly described, the present application is a "division" of the parent application. Everything described in the application at bar is described in the parent but much that the parent contains is omitted. The parent application matured into patent No. 2,952,060 on September 13, 1960, three months after the filing of the appealed application.

The sole rejection before us is the examiner's rejection, affirmed by the board, of all claims for double patenting in view of claims 1 and 2 of the issued Allen patent. The dissenting board member disagreed with that rejection.

### The Invention

The invention is a waler bracket which is one element of a mechanical combination which, as a whole, constitutes a concrete wall form structure for poured-in-place concrete walls. To understand the element it is necessary to understand the whole structure. We will describe it briefly by reference to Figs. 1, 2, and 5 of appellant's drawings:

Fig. 1 is the waler bracket, Fig. 2 is a fragmentary sectional elevation through a wall form with concrete poured therein, and Fig. 5 illustrates diagrammatically the functioning of the bracket to tension the tie rods which hold the form walls in spaced relation.

Fig. 2 shows the five elements employed in combination to make a concrete wall form. 12 and 14 are sheets of heavy plywood which are backed up by studs 42, for example 2 x 4's on edge against the plywood. Tie rods 28 having fixed washers 62 extend through holes in the plywood panels and have heads 26 protruding from the holes. Washers 62 hold the form walls apart. A waler bracket 10 is hung on each end of each tie rod. It will be understood that tie rods are aligned horizontally. Walers 40, which may be 2 x 4's, are horizontally positioned in the brackets to bear against the studs 42. As shown in Fig. 5, the weight of the walers pressing down on the brackets presses inwardly on the walls 12, 14, holding them tightly against the washers 62, which are secured to the tie rods by welding or the like.

Since we are concerned only with whether there is double patenting, the important question is the relationship of the subject matter of the claims on appeal to the patent claims relied on by the Patent Office to support the rejection. We will consider the appealed claims first. Claim 1 reads as follows except that the breakdown and emphasis are ours:

"1. A waler bracket

*for* concrete wall forms made of plywood sheets for use with form tie rods having integral heads on each end and spacer abutments and with coacting horizontal walers and vertical studding,

comprising:

a metal bracket having a substantially horizontal rest portion;

an upwardly directed wall form engaging pierced end of said bracket disposed at right angles to said rest portion;

a bayonet type hole in said pierced end having a lower portion substantially round

*to fit* over the head of a tie rod and an upper portion of slot form starting at said lower portion and extending upwardly

*and adapted* to snugly engage the rod portion of said tie rod

said horizontal rest portion being longer than said wall form engaging end of said bracket

*so that* a waler applied to the outer portion of said horizontal rest portion will produce an effective tie rod tensioning force;

and [an?] upwardly directed outer end of said bracket disposed at substantially right angles to said rest portion

*to form* an engaging surface for the edge of a waler."

The first matter to be settled is the subject matter of that claim. The dissenting member of the board said:

"The essence of the holding of the majority with respect to double patenting is that the present claims are drawn to a combination of bracket and concrete form structure, as are the patent claims. In my opinion the claims are drawn to a bracket, *per se,* as a subcombination, which is suitable to use in the named environment. While it is true that the claims herein refer to the use to which the bracket may be put by statement of use, adaptability and otherwise, such statement of environmental use does not, in and of itself describe a combination. In re Dean, 48 CCPA 1072, 1961 C.D. 474, 722 O.G. 301, 291 F.2d 947, 130 USPQ 107."

We agree with the dissenter's interpretation except that we would characterize the bracket to which the claim is drawn as an element of a combination rather than a subcombination. The bracket is a single integral entity whose shape is defined, rather than a combination of parts which is the usual nature of a subcom-

bination. It will be seen that the statements of purpose, use, and environment are indented in the claim and introduced by the italicized words and that the rest of the claim, according to "common sense interpretation of language according to the rules of grammar in the context in which it occurs," as we said in the Dean case, describes only a waler bracket and not a combination with a concrete form structure.

The other claims are a second independent claim, 3, and two dependent claims further limiting claims 1 and 3, respectively. Claim 3 resembles claim 1 but differs in scope and terminology. Claims 2 and 4 are possibly a cause for the difficulty in this case as each opens with the phrase, "The combination according to Claim" 1 or 3. As above stated, we do not consider claim 1 or claim 3 to define a combination, or a subcombination, but a bracket. The claim-drafter's inappropriate choice of language in claims 2 and 4 does not change that situation. Claims 2 and 4 themselves, as dependent claims, merely add reference to the bracket corner indicated as "fulcrum" in Fig. 5 and its functional utility.

In summary, therefore, all claims on appeal are directed to a waler bracket and this also corresponds to the invention described in the specification.

We note in leaving this point that the Patent Office solicitor quite clearly agrees with our construction of the claims and was good enough to add to the Dean case cited by the dissenting board member further precedents, in *support* of his position, as follows: In re Ashley, 315 F.2d 945, 948, 50 CCPA 1200, 1204; In re Hutchinson, 154 F.2d 135, 33 CCPA 879, "and other decisions of similar import cited in the appendices to Kropa v. Robie," 38 CCPA 858, 187 F.2d 150, 88 USPQ 478. At the hearing he said, "The error of the majority of the board is so clear I'll concede it." This quite thoroughly disposes of the view of the examiner and the board majority that the appealed claims are directed to a combination rather than to a bracket.

We turn now to the claims of Allen's issued patent to see whether there is "double patenting." There are only 3 claims and only claims 1 and 2 are relied on. It will facilitate an understanding of them to add Fig. 3 from the drawings of the patent to more clearly show a featured element, which may also be seen on a small scale in Fig. 2, and in a variant form in Fig. 5, both supra.

FIG—3

The principal parts of the concrete form will be recognized in fragmentary detail, the plywood panel being 10, having opening 16 for tie rod 14 on which is washer 26 and head 22. The adjacent end of the waler bracket is 20, 20' in which is the slot 18. The element being here emphasized is tie rod positioning member 34 which is a sort of second head which keeps the tie rod centered in the hole 16. The purpose of this member, or "positioning means" as it is called in the claim, is to prevent damage to the plywood wall panels when the forms are removed which would occur if the tie rod ends were permitted to sag under the weight of the walers and waler brackets so that the heads 22 became misaligned with the holes and fixed in that position by the setting of the concrete. Since many tie rods penetrate each panel, it would be difficult if not impossible to remove the panels from misaligned tie rods without destruction or at least great dam-

age. The desire is to reuse the panels as many times as possible.

In patent claim 1, which follows, we have italicized each of the elements positively recited therein from which it should be clear that it defines a combination of coacting mechanical elements, notwithstanding its somewhat inapt opening clause:

"1. A positioning and tensioning means for concrete wall form tie rods, comprising: a concrete wall form having *spaced apart wells [walls] with openings* formed therein; a rigid *metal bracket* having a substantially horizontal *central portion* and *upturned ends* each of which are shorter than said central portion; a metal *tie rod* having a rod portion and ends formed as integral *heads* providing an inside bearing surface for use in positioning the outside wall surface of said concrete wall form; a pair of *spacing washers* fixedly secured in spaced relationship on the tie rod and disposed to bear against and space the interior wall surfaces of said concrete wall form; said integral heads being dimensioned to pass through said openings in said wall forms; said spacing washers having sufficiently greater diameter than the said heads to provide annular bearing surfaces on the inside surface of the wall forms, around said openings; *positioning means* having an outside diameter substantially the same as said integral heads and disposed on said tie rod between the integral heads and the adjacent washers to center said tie rod in said openings in said wall forms; a first end of said bracket having a *bayonet opening* receiving said integral head and resting on the rod portion of said concrete form tie rod and in contact with the outer face of said concrete wall form, and an opposite end coacting with said horizontal portion to form a whaler [sic] retaining means."

The parent case uses the term "whaler" throughout while the instant application substitutes the term "waler." Claim 2 reads:

"2. The subject matter of claim 1 in which a fulcrum is provided at the junction of said first end and the horizontal portion of said bracket; and said bracket providing a lever when bearing on the outer face of said wall form, which permits the weight of the whaler to tension said tie rod when the whaler is placed on said bracket and the bracket and whaler pivot on said fulcrum."

Our view as to the subject matter of the foregoing claims of the patent seems to be in complete accord with that of the examiner and of the board, namely, that they are directed to a *combination* of walls, headed tie rods having spacing washers and positioning means (34), and a waler bracket which functions, when supporting walers, to pull on the tie rod ends and push the walls against the washers, the positioning means keeping the rod ends centered in the holes in the walls.

The claims on appeal are directed, as we have held, to a waler bracket *per se* as a novel element *usable in* the patent combination. They are thus two separate inventions, albeit they may be closely related in use, a novel mechanical combination and a novel element. We hold that there is no double patenting.

Concurrently herewith we are deciding a similar issue in In re Heinle, 52 CCPA ——, 342 F.2d 1001, —— USPQ ——. (Appeal No. 7233.) Our holding herein is believed to be in accordance with and controlled by the following prior decisions of this court: In re Coleman, 189 F.2d 976, 38 CCPA 1156; In re Sarett, 51 CCPA 1180, 327 F.2d 1005, 140 USPQ 474; In re Carlton, 77 F.2d 363, 22 CCPA 1223; and In re Stanley, 214 F.2d 151, 41 CCPA 956. In the Stanley case the opinion discussed Miller v. Eagle Mfg. Co., 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121, saying that the Supreme Court

set forth three classes of double patenting cases, the third being:

"3. Where the second patent covers matter described in the first patent, but is essentially distinct and separable from the invention claimed in the first patent."

We pointed out that "in cases falling under three, the validity of the second patent could be sustained." We find the facts here to be within that category.

The Patent Office Solicitor cites Miller v. Eagle in support of his claim that there would be double patenting here. We find that it furnishes no support for that contention. Miller v. Eagle was a case in which there was *only one invention*. As we said in Stanley (41 CCPA p. 961, 214 F.2d p. 154), "in that case the same inventor had obtained two patents on a spring of peculiar construction, claiming the same spring in combination with the same elements in both patents." We will be even more specific. The patentee in Miller v. Eagle based his claim that the patents were not for the same invention only on the fact that in one patent the claims mentioned two inherent *functions* of the spring while in the other patent the claims mentioned only one of those inherent functions, the *mechanism* claimed being the same.

The Patent Office brief also cites and relies on the following cases: Palmer Pneumatic Tire Co. v. Lozier (6th Cir.), 90 F. 732, In re Hadsel, 173 F.2d 1010, 36 CCPA 1075; Pierce v. Allen B. Du Mont Laboratories, Inc. (3rd Cir.), 297 F.2d 323; American Communications Co. v. Pierce (1st Cir.), 208 F.2d 763; and

Pierce v. Hewlett Packard Co. (1st Cir.), 220 F.2d 531. Upon analysis they will all be seen to be cases wherein there was but a single invention and of the Miller v. Eagle type. While there is some broad language in the Palmer Tire case purporting to state the rule of Miller v. Eagle, careful consideration of the latter opinion will show that the broad language is not justified by the facts or the decision of the Supreme Court thereon. It is the insupportable broad language of Palmer Tire the solicitor paraphrases in his brief as a rule [1] we should follow. We decline to do so on the ground that it is against the great weight of authority and contrary to long-standing Patent Office practice, approved by this court, relating to divisional applications.

The decision of the board is reversed.

Reversed.

ALMOND, Judge (dissenting), with whom MARTIN, Judge, joins.

I feel that the majority decision will unlawfully extend Allen's monopoly on the combination claimed in his patent No. 2,952,060. Normally, in the absence of special circumstances not present here, upon the expiration of a patent, the public is free to practice the claimed invention without fear of infringement. In this case, however, a person using the combination claimed in the Allen patent after it expires will be infringing the later issued patent claiming the waler bracket alone. The doctrine of double patenting was developed to prevent such a result. Yet, the majority has, in effect, written double patenting out of the law

1. As it appears in Palmer Tire the statement is:

"One cannot extract an essential element of his invention from a former patent, without which the former patent would not have been granted, and make it the subject of a subsequent patent."

We do not agree with the view of the Sixth Circuit Court of Appeals in 1898 that that is a rule derivable from Miller v. Eagle or with that court's views as to what the facts were in that case.

From the facts in Palmer Tire, which was an interfering patent suit under R.S.

4918, it seems clear that the patentees were developing bicycle tires and improved them by developing rubber-bonded cord fabric structure which they patented, claiming the inventions as *tires*. The court held that they could not patent the inventions again claiming them as *cord fabrics*. Though the issue the court was deciding was double patenting, its holding was that both of the patents before it were invalid "for lack of invention." The dictum above quoted is simply too broad to constitute a rule of general applicability and should be limited to the situation before the court.

when the relationship between the inventions in issue is that of combination-subcombination (a single element here).

At the outset, let me say that I find no fault with the majority's detailed analysis of the claims because I think it merely shows that the appealed claims are drawn to a novel single element, the waler bracket, while the patent claims a novel combination including the *very same* waler bracket. The majority calls the element and combination "two separate inventions." The word "invention" has been subject to many definitions in the patent law recently. The word "invention" as used by this court in the past few years does not connote a patentable invention but merely that which is the subject of a patent application whether or not it is novel, useful, unobvious or within a statutory category of things which may be the subject of a patent. I will, therefore, attempt to use the majority terminology indicating what I think it means. I also feel it necessary to go to some lengths to point out precisely where I feel that logic has become subservient to and distorted by the "magic words" used in double patenting analysis.

To return to the majority opinion, I reiterate that I agree that two separate inventions, i. e., a waler bracket and a combination including the waler bracket, are claimed in the application and patent. Apparently, this finding of fact ipso facto dictates the result—no double patenting. We are not given any analysis or any rule that requires such a result. Thus, the opinion states a rule, a new and dangerous rule, I think, that after obtaining a patent on a combination an inventor can *always* obtain a patent on an element of the combination claimed in a later, copending application.

As previously indicated, this rule would allow an inventor to control the use of his combination invention long after the seventeen year limitation set by Congress had expired. Such an evasion of the limit on the patent monopoly should not be allowed without legal justification. No such justification is present here.

While I am not aware of a precise legally accepted definition of "element" and "combination," I know that the terms seem applicable to and often are applied to specific chemicals and chemical compositions. Thus, as I interpret the majority opinion, an applicant would be allowed to patent a chemical combination, e. g., a wonder drug and a suitable carrier for the drug, and then later to patent the drug alone based upon an application filed after the combination application. Seventeen years after the combination of drug and carrier had been patented, the public would still not be free to use the drug with the carrier or in any other obvious manner because of the dominance of the later issued patent to the drug alone. That result is an unlawful extension of the patent and is condemned by our decision in In re Hadsel, 173 F.2d 1010, 36 CCPA 1075. Such an extension of the monopoly has also been held unlawful by other courts. See, e. g., Pierce v. Allen B. Du Mont Laboratories, Inc., 297 F.2d 323, (3rd Cir. 1961); Pierce v. Hewlett Packard Co., 220 F.2d 531 (1st Cir. 1955); Palmer Pneumatic Tire Co. v. Lozier, 90 F. 732 (6th Cir. 1898) and cases collected by Stringham, Double Patenting § 2866 (1933).

All of the cases cited here and in the majority opinion recognize that extension of the monopoly is undesirable. In those cases cited by the majority which do allow an extension of monopoly by issuance of the broad patent last, the applicant was the victim of some quirk of Patent Office procedure which the court considered in allowing the applicant to receive broad coverage. In In re Coleman, 189 F.2d 976, 38 CCPA 1156, the court found that there was not necessarily an extension of monopoly because, as the result of a limitation required by the examiner, the claims of the first invention could be practiced without infringing the later issued patent. In In re Sarrett, 327 F.2d 1005, 51 CCPA 1180, the application and patent had been filed on the same day. It was not possible to claim both inventions in the same application because the inventors were different. Thus, the fact

that one application issued before the other was primarily a result of Patent Office procedure. At least, no evidence of delaying tactics by the applicant was cited. In In re Carlton, 77 F.2d 363, 22 CCPA 1223, the Patent Office had first required division and had then rejected one of the divisional applications on the patent into which the other divisional application had matured. This court reversed the rejection. The same result would most likely be reached today under 35 U.S.C. § 121. In In re Stanley, 214 F.2d 151, 41 CCPA 956, a narrow improvement application, filed for two years after the basic broad application, issued first and was used by the Patent Office to reject the basic patent. I thus think that each of the cases cited by the majority can be distinguished from the issue presented here.

The majority would distinguish the two Pierce cases and the Hadsel case on the ground that only one invention was present in those cases. If the majority means that exactly the same combination of elements was claimed in the patent and application, it is clearly in error. If the majority meant something else when it said there was only one invention, it would have been well to have set forth the test by which one may tell whether or not a subcombination is the same invention as a combination. It is the failure of the majority opinion to set forth any test other than "different invention," if indeed that is a test, for determining whether double patenting exists which disturbs me most.

A review of this court's decisions over the last few years discloses at least four different relationships which have been said to exist between claims in a double patenting analysis.

I. Both claims in question may either be *identical* or differ from each other by a *mere colorable variation*. In such a case double patenting exists and nothing apparently will save the claims. In re Siu, 222 F.2d 267, 42 CCPA 864, and In re Robeson, 331 F.2d 610, 51 CCPA 1271.

II. The claims may be drawn to *different inventions*. Although the differ-

ence between the claims may be an obvious one, it must be more than a *mere colorable variation*. When there are *different inventions,* a terminal disclaimer will obviate a double patenting rejection. In re Robeson, supra, In re Kaye, 332 F.2d 816, 51 CCPA 1465.

III. If the claims are *patentably distinct,* there is no double patenting. In re Sarrett, supra, and In re Christiansen, 330 F.2d 652, 51 CCPA 1236. In Sarrett, the claims were allowed without terminal disclaimers. Thus, for claims to be *patentably distinct,* the difference between them must be greater than that present when there are *different inventions.* Furthermore, it should be noted that although this court in Christiansen used an analysis similar to that used in an obviousness case, an obviousness type of analsyis was not applied in Sarrett. In fact, in In re Sarrett, supra 51 CCPA at 1192, 327 F.2d at 1013, we appear to have expressly rejected the obviousness approach in stating:

> "We are not here concerned with what one skilled in the art would be aware from *reading* the claims but with *what inventions the claims define.*"

Thus to be *patentably distinct,* two claims need not be unobvious, one in view of the other, and yet the differences between the claims must apparently be greater than when *different inventions* are claimed. A more precise definition of "patentably distinct," I cannot glean from reading the cases.

IV. If the claim of the application is *obvious* (tested by the unobviousness requirement of 35 U.S.C. § 103) in view of the *claims* of the patent, double patenting exists; if they are unobvious, no double patenting. Judge Rich concurring in In re Zickendraht, 319 F.2d 225, 50 CCPA 1529.

I think that our varied approaches, enumerated above, have overly confused an already confusing subject. For example, my analysis indicates that there is a region somewhere between *different inventions* and *obviousness* where claims

are *patentably distinct* and thus avoid double patenting. Such a distinction is too fine to be meaningful. I am not unmindful of the fact that the various approaches might possibly be rationalized on the basis of the type of claims to which they were applied, i. e., combination-subcombination, species-genus, basic-improvement. I do not think any such distinctions are set forth, however.

I think that only one test need be applied *in the present case*—is the claim of the *later* filed application unobvious[1] in view of the claims of the earlier filed application? If the answer is yes, then the applicant is entitled to a second patent under the law even if it will extend the monopoly of the first patent. If the answer is no, the applicant is not entitled to a patent which will extend the monopoly because he has given the public nothing, in consideration for the added years of monopoly, which was not obvious to the public. Here the description of the waler bracket in the claims of the patent and the appealed claims is almost identical. There can be no question that the bracket of the appealed claims is obvious in view of the patent claims.

It may well happen that after filing an application for a narrower combination, the applicant realizes that a broader subcombination claim is patentable and necessary for proper protection of the invention. If the broader claim is obvious in view of the earlier filed narrower claim, the applicant is not without recourse. He may be able to add broader claims to his first filed application. Such a solution should have been possible for the appellant here. If the first application has already issued as a patent, it may be possible to add broader claims by reissue under 35 U.S.C. § 251. If neither of these approaches works, he may file a terminal disclaimer under 35 U.S.C. § 253, thereby avoiding an extension of the monopoly. Thus, it seems unlikely that an applicant would be unduly penalized

for failing to properly cover his invention (or inventions) in one application.

As indicated above, those cases relied upon by the majority which allowed an extension of the monopoly involved technicalities of Patent Office practice which placed the applicant in a difficult situation. The appellant here was not faced with any of those problems. Thus, this case presents a clear issue—is Allen entitled to claims in his later filed application which will extend the monopoly of his earlier filed patent when these later claims are obvious in view of the patent claims? I do not think that he is, and would therefore affirm the board's decision.

---

[1]. Since the patented invention is *not prior art*, it is not technically correct to say that 35 U.S.C. § 103 is applied. However, the test is the same as the unobviousness requirement of 35 U.S.C. § 103.