### Application of David D. McCUE and Thomas A. Brendle.

### Patent Appeal No. 8891.

United States Court of Customs and Patent Appeals.

April 5, 1973.

Edwin L. Reynolds, Washington, D. C., attorney of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; R. V. Lupo, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, sustaining the examiner's rejection of claims 1 and 9 of appellants' application.[1] Claims 2–5, 7, and 8 have been allowed.

### The Invention

Appellants' invention relates to a device designed to provide a continuous record of the speed of a locomotive as it progresses along the track. The record is produced on a paper tape by a stylus movable transversely thereon. A first motor rotates a drive drum to move the tape while a second motor controls the transverse position of the stylus on the tape. The device includes an alternating current generator driven from a wheel of the locomotive to produce a signal of a frequency and amplitude proportional to vehicle speed. That signal is converted to a direct current signal which is applied to a recording unit "in such fashion as to drive the paper record therein at a rate proportional to vehicular speed and also to actuate a stylus in proportion to the vehicular speed so as to provide a visual record on the paper." Additional styluses actuated by individual solenoids may be provided to record various other events such as application and release of brakes. The auxiliary styluses are mounted in alignment on the same transverse line as the speed recording stylus.

The appealed claims read:

1. In a recording system for locomotives, in combination, a record paper system including drive means for moving a record paper linearly in proportion to the distance travelled by the locomotive, recording means for producing a visual record upon the record paper indicating the speed of the locomotive, and transducer means for actuating both said drive means and said recording means whereby the distance travelled and locomotive speed records cooperatively produced thereby stem from a common signal source, said transducer means having a single output signal proportional to locomotive speed connected to both said drive means and said recording means.

9. In the recording system as defined in claim 1 including a plurality of auxiliary styluses mounted in alignment with said recording device tranverse to the direction of record paper travel, and individual solenoids for actuating respective auxiliary styluses in accord with events other than vehicle speed.

### The References

Parrish[2] discloses a speed recording apparatus for locomotives, a portion of the control circuit of which is shown in

---

1. Serial No. 687,589, filed December 4, 1967.

2. U.S. Patent No. 2,342,687 issued February 29, 1944.

the following excerpt from Fig. 1 thereof:

The drawing shows an assembly including gears 18 and 20 which is driven from a roller 17 engaging a locomotive driver wheel 16 and which drives two interrupters 19 and 21 to actuate switches 61 and 22 respectively. Switch 22 acts through an electrical circuit to drive a paper tape in a recorder in proportion to the distance the locomotive travels. Switch 61 acts through an electrical circuit to control the transverse position of a stylus on the tape to indicate locomotive speed.

Wait[3] discloses a recording system for locomotives which includes, in addition to a stylus for recording speed on a paper tape, a plurality of auxiliary "pencils" or styluses actuated in accordance with other events. Wait states the "points of these [auxiliary] pencils are all arranged substantially on the same transverse line" as that of the pencil or stylus for recording speed.

### The Rejection

■ The examiner rejected claim 1 as fully met by Parrish under 35 U.S.C. § 102 and claim 9 as obvious over Parrish in view of Wait under 35 U.S.C. § 103.

After expressing its agreement with the examiner as to both claims the board stated:

In construing these claims, we have followed the conventional practice giving the terms used therein the broadest meaning which within reason they will stand.

When the term transducer is given its dictionary meaning, i.e., a device actuated by power from one system and supplying power to a second system, we find that this term is definitive of the elements of Parrish which the Examiner asserts forms a transducer. This transducer means 17 and 18 has a single output signal proportional to locomotive speed, and is connected to both the drive and recording means, as recited in claim 1.

Claim 9, which recites additional stylii [sic] and their operating solenoids for recording additional operating conditions, is deemed to involve only an obvious modification of the prior art.

Wait, cited by the Examiner, shows that it is conventional in the art to use separate stylii [sic] and operating solenoids for recording other operating conditions as well as speed on the performance chart of a locomotive.

### Opinion

The determination of this appeal depends on the meaning attributed to the word "transducer" in claim 1 and the breadth of the remaining claim terminology. Appellants contend that the board erred in its broad interpretation of "transducer" and in not finding the limitation of means for actuating both the drive and recording means "from a common signal source" to avoid anticipation by Parrish.

■ Appellants argue specifically that "the definition most generally accepted, particularly by authorities of a scientific nature, limits 'transducer' to a device which receives one kind of energy and delivers another." They cite authorities which set out such a limited definition and urge that the existence of conflicting definitions renders "transducer" ambiguous, with the result that it must be construed in light of the speci-

---

3. U. S. Patent No. 2,325,451 issued July 27, 1943.

fication. We find no merit in that position. The law is that an unpatented claim is given its broadest reasonable interpretation. See In re Carlson, 56 CCPA 1309, 1315, 412 F.2d 255, 260–261, 162 USPQ 233, 237 (1969) and In re Prater, 56 CCPA 1381, 1395–1396, 415 F.2d 1393, 1404–1405, 162 USPQ 541, 550–551 (1969). In their brief, appellants state:

> The Board did not cite the dictionary in which that definition was found, but it may well have been Webster's New 20th Century Dictionary which contains a definition corresponding to that used by the Board.

We find the board's definition also supported by the definition given in Webster's Third New International Dictionary (1961 ed.) at 2426:

> transducer * * *: a device actuated by power from one system and supplying power *in the same* or any other form to a second system * * *. [Emphasis supplied.]

The meaning of the term "transducer" found by the board is plainly a reasonable one and we do not find it to give rise to any ambiguity in the claim language. Further, in conformity with the board's position, we agree that "transducer" so defined finds full response in Parrish's wheel 17 and gears 18 along with the shafts associated therewith which provide a "single output signal" as required in claim 1. The reference to a "common signal source" does not limit the claim to an electrical "signal" as appellants appear to urge and thus also fails to distinguish over Parrish.

Appellants further state:

> The essential difference between appellants' device and that of Parrish is that in the former the motion of the locomotive wheel is used to generate a single electrical signal which is simultaneously transmitted to and controls the paper drive and recording means whereas in the latter, the wheel motion generates two distinct sets of electrical impulses or signals which are separately transmitted to and control the said means. This is not an arbitrary difference since, if a single signal is used, any error in the signal will correspondingly affect both the drive and recording means, whereas if two signals are used, either signal may be in error without any error being present in the other.

In essence, their position is that Parrish's device is not equivalent to theirs because the Parrish device does not perform the same function in the same way as their device. In their view Parrish's "means" are required by the last paragraph of 35 U.S.C. § 112 to be equivalent to the "means" recited in appellants' claims before an anticipation of the claims under section 102 can be made out.

We find no difference between the mode of operation of Parrish's device and the mode of operation of the device *defined by the claim* under consideration. In terms of claim 1, the "drive means" and "recording means" are not restricted to devices whose *sole* functions are to drive or record without any further manipulation of the single output signal supplied to them. Such a construction of those terms would exclude the very embodiment disclosed in appellants' specification. For example, taking as "driving means" that to which the signal is delivered from appellants' transducer means, and which results in driving the chart, the term must include a stepping motor which is intermittently driven in accordance with the signal. The stepping motor includes a drive shaft which projects through a plate and carries a first pinion. The first pinion is in mesh with a gear carried by a second shaft which is also mounted on the plate and which carries a second pinion. A further gear reduction results from the mesh between the second pinion and a second gear on a third shaft which is also carried by the plate. The third shaft carries a third pinion which meshes with a third gear which is mounted on a fourth shaft which carries the driving roll of the paper tape recorder.

**1204**

As appellants state, if error occurs in their single signal, both their driving means and their recording means will be affected in the same manner. But the same is true of Parrish—if something affects the accuracy of the speed of measuring wheel 17, such as slippage, or if one of the gears 18 lost a tooth, both the drive means and the recorder means will be equally affected. Of course, should a tooth be lost from breaker cam 19 in Parrish, which we think the term "recording means" is broad enough to include, one system will be in error while the other one will not, but the same would be true should appellants' drive motor fail or should any of the gears between it and the drive roll lose a tooth. Finally, two shafts are required in Parrish's device to carry the rotational speed signal to the "recording means" and to the "drive means." While the disclosure in appellants' application is scanty in this regard, appellants' stylus-controlling device is clearly separate from their roll drive, and there are indications in both the specification and the drawings that separate wires convey the appellants' single signal to those two devices. Thus difficulties in the shaft going to Parrish's "drive means" would again correspond to difficulties in the wire going to appellants' chart drive.

As to claim 9, we agree with the board that the use of aligned auxiliary styluses as by Wait is an "obvious modification" of Parrish. Appellants' take the position that Wait's styluses are "arranged in a group but not in alignment," and that the arrangement in alignment "permits the use of a larger number of styluses than is possible with Wait's arrangement." We see no reason why this would be so, since the bodies of Wait's styluses, which are on opposite sides of the line defined by their points on the recording paper, would seem to interfere with each other less than the bodies of appellants' styluses which are aligned in parallel on the same side of that line. At any rate, the disclosure of Wait indicates that the level of skill in the art was such that it would have been obvious to so arrange Wait's styluses to accommodate a greater number thereof.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.